HALL, Judge.
Plaintiffs appeal from a judgment rendered after trial on the merits dismissing their suit to annul a cash sale deed on grounds of fraud and failure of consideration. For reasons expressed in this opinion we reverse the judgment of the district court, annul and set aside the sale, and recognize plaintiffs as the owners of the property purportedly conveyed by the deed.
Plaintiffs, Lorenza Glass and her brother, John Glass, were the owners of an undivided two-thirds interest in a 10.54 acre tract of land in Caldwell Parish. On November 27, 1967, they executed a cash sale *85 warranty deed to defendant, James Glenn Mott, reciting a consideration of $950 cash, receipt of which was acknowledged. In October, 1971, plaintiffs filed suit against defendant to set aside the sale on the basis of fraud and failure of consideration, to be recognized as owners of the property described in the act of sale, and to enjoin defendant from proceeding with a partition suit filed by him against plaintiff’s sister who was the owner of the other one-third interest in the property.
Plaintiffs allege that at the time of the purported sale, defendant was employed by Caldwell Credit Plan, Inc., a small loan company to which plaintiffs were indebted for approximately $1,200. The petition further alleged that plaintiffs were in arrears on their payments and defendant represented to plaintiffs he would credit their indebtedness with $950, the amount shown in the deed. The petition further alleged that defendant never intended at the time of execution of the deed to pay them any consideration, that the transaction was a fraudulent scheme confected by defendant to defraud and cheat plaintiffs out of their property, and that no credit was ever given them on their indebtedness to the loan company.
Defendant’s answer was in the nature of a general denial.
At the trial, plaintiffs offered evidence to support the allegations of their petition. Defendant offered evidence in an effort to show the true consideration for the deed was the total amount of $700 which was to be paid $200 cash at the time the deed was signed and $500 by payments to the loan company as credits on plaintiffs’ indebtedness. Defendant’s evidence was offered over the objection of plaintiffs.
In written reasons for judgment the district court held defendant’s evidence as to the true consideration was admissible and that the evidence established substantial compliance by defendant with his agreement with plaintiffs. Accordingly, judgment was rendered in favor of defendant.
On appeal plaintiffs contend:
(1) The district court erred in admitting defendant’s evidence concerning the true consideration and payment thereof, over plaintiffs’ objection, because defendant failed to plead an affirmative defense or to allege the facts he sought to prove; and
(2) Even if the evidence was admissible it fails to support defendant’s contentions as to the true consideration and payment thereof.
We hold defendant’s evidence was admissible but the evidence fails to establish payment to or for the account of or receipt by plaintiffs of any consideration for the execution of the deed.
On the issue of the admissibility of the evidence, plaintiffs argue that proof of payment should not have been allowed, as payment is an affirmative defense which must be pleaded in the answer under LSA-C.C.P. Art. 1005 which provides:
“The answer shall set forth affirmatively arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, division, duress, error or mistake, estoppel, extinguishment of the obligation in any manner, failure of consideration, fraud, illegality, injury by fellow servant, transaction or compromise, and any other matter constituting an affirmative defense. If a party has mistakenly designated an affirmative defense as an incidental demand, or an incidental demand as an affirmative defense, and if justice so requires, the court, on such terms as it may prescribe, shall treat the pleading as if there had been a proper designation.”
Payment as a mode of extinguishing an obligation is an affirmative defense under the express provisions of Article 1005. However, the present suit is not a suit to enforce an obligation and defendant’s defense is not that the obligation was extinguished by payment. Thus, this particular *86 provision of Article 1005 and the several cases cited by plaintiffs to the effect that payment is an affirmative defense are inapplicable.
Ordinarily, the defendant seeking to prove a consideration other than that recited in a deed and payment thereof would have to affirmatively allege such facts as a prerequisite to the introduction of evidence in support thereof. Taylor v. Spencer, 225 So.2d 98 (La.App. 2d Cir. 1969). In this case, however, plaintiffs themselves in their petition affirmatively alleged the recited consideration was not the true consideration and the true consideration was the crediting of their indebtedness to the loan company which was never done. Defendant denied these allegations. The question as to the nature of true consideration and the payment thereof was squarely put at issue by plaintiffs. Thus, no special affirmative allegations were required on the part of defendant.
The situation in the present case is quite similar to that involved in Hinton v. May, 241 So.2d 583 (La.App. 2d Cir. 1970). In that case plaintiff sought to annul a deed on the basis that the recited consideration had not in fact been paid. Plaintiff’s petition alleged that the consideration was never in fact paid or intended to be paid, that the real consideration was the agreement by vendees to furnish a home for the vendor, and that the conveyance was in fact a donation in disguise. The defendants denied these allegations. Plaintiff objected to evidence offered by defendants on the basis the answer failed to contain affirmative allegations to support the introduction of evidence of other consideration. This court, in an opinion by Presiding Judge H. W. Ayres, noted that the main thrust of plaintiff’s petition was that the recited consideration was never paid which defendant’s answer denied. The opinion emphasized the fact that plaintiff’s own pleadings alleged the true consideration for the conveyance. Approving the admissibility of defendant’s evidence, this court held:
“Special allegations in the answer are not necessary to authorize the introduction of evidence, the direct tendency of which is to disprove what the plaintiff alleges.”
Considering all of the evidence offered at the trial of the case, we are nevertheless of the opinion it fails to establish payment by defendant or receipt by plaintiffs of any consideration for the execution of the deed.
Plaintiffs testified they owed Caldwell Credit Plan, Inc. approximately $1,200 and were in arrears on their payments. They agreed with the defendant, Mott, to convey to him their undivided two-thirds interest in the property in consideration for which Mott was to credit their account with the loan company for the amount of $950. They testified they signed the deed at a lawyer’s office (the lawyer is now deceased) and that no cash was paid. They testified Mott was to give them a receipt and when they went back the next day he did not give them a receipt but did loan them $100 which was added to their account. Plaintiffs testified they never received any credit on their account with the loan company and were still making payments on their account.
The evidence established that Caldwell Credit Plan, Inc. was subsequently taken over by Old Southern which was in turn taken over by Sales Finance Company, Inc. the present operator of the business. It was also established that in about February of 1968, some four months after the transaction in question, it was discovered that Mott had embezzled a substantial sum of money from the loan company and his employment was terminated. Mott’s indebtedness to the loan company was settled by payment of the sum of $12,000, which was actually paid by Mott’s father.
The evidence further established that although the deed was executed on November 27, 1967, it was not recorded until January 9, 1968.
Mott testified the true consideration for the deed was the amount of $700, which *87 was to be paid $200 cash at the time of the sale and $500 to be credited on plaintiffs’ indebtedness with the loan company. Mott testified he gave the plaintiffs “approximately” $200 in the hallway outside the lawyer’s office. He testified he made arrangements with the manager of the loan company to delay making payments on the plaintiffs’ account as there was no need to do so ht that time as far as the loan company was concerned. Mott admitted he made no payments on plaintiffs’ account or to their credit prior to the time he was discharged by his employer. He testified that in June, 1968, his father paid the loan company $500 which was credited $300 on one account and $200 on another of plaintiffs’ accounts. Mott’s father testified he went to the bank and borrowed the money and paid $500 to the loan company, sometime after making the big settlement for his son’s indebtedness.
The district court rested its decision largely on the testimony and credibility of Jim Worley, manager of the loan company at the time the transaction took place. Worley testified Mott told him about the transaction at the time it was taking place, that Mott was to pay $500 on plaintiffs’ accounts but he told Mott he could wait and do it later, and that he saw some money changing hands between Mott and plaintiffs in the hallway outside the lawyer’s office about the time the transaction took place.
Two ledger cards purporting to show two separate accounts owed by plaintiffs to the loan company were offered into evidence. These cards were records of the old Caldwell Credit Plan, Inc. which had been turned over to Old Southern and then in turn to Sales Finance. They were produced by the current manager of Sales Finance in response to a subpoena duces te-cum directing him to produce all records of the loan company in connection with the accounts of plaintiffs.
One ledger card purports to show an account in the amount of $2,088 owed by plaintiffs to the finance company. It contains an entry written in ink showing a $200 payment on June 7, 1968. It reflects no further payments. The card shows the date of the loan as November 30, 1967, three days after the date of the deed in question.
The other ledger card purports to reflect an account owed by plaintiffs in the amount of $435.60 and shows the date of the loan as February 2, 1968, more than two months after the deed was signed. This card contains a notation in ink dated June 7, 1968, showing “(300.00)” and “Pd. in full 6-7-68 by 12M settlement”. Worley testified these notations were made by him. Worley testified these amounts were paid by Mr. Mott, Sr. and were part of the settlement of the younger Mott’s overall indebtedness to the company. It is to be noted that Worley’s employment with the company terminated in June or July shortly after these notations were made on the cards. Worley testified he agreed to accept $300 in full payment of the $435.60 account in order to get it paid and because that was the amount of cash the company had actually put out.
Our conclusion that the evidence fails to substantiate the payment of any consideration is based on numerous conflicts, inconsistencies, variances and unexplained aspects of the transaction. Some of the particular factors leading to this conclusion are as follows:
(1) Little credibility can be attached to the testimony of the defendant, Mott, in view of the fact that he was admittedly embezzling substantial sums of his employer’s money at about the same time these transactions were taking place;
(2) Although the deed was executed on November 27, 1967, it was not recorded until January 9, 1968. Defendant, Mott, could offer no explanation for this delay;
(3) Defendant, Mott, testified he paid plaintiffs “approximately” $200 at the time the deed was signed in the *88 hallway outside the lawyer’s office. Why in the hallway, and why “approximately” ? Mott produced no receipt or other evidence of this payment;
(4) By defendant’s own admission, no payments were credited to plaintiffs’ accounts for almost seven months after the deed was signed ;
(5) Although Mott, Sr. testified he paid $500 in cash at a time later than the $12,000 settlement, the ledger card reflects $300 credit on one account by virtue of the $12,000 settlement;
(6) According to the ledger cards neither account was in existence at the time the deed was signed. One account is dated three days later, the other account is dated about two months later;
(7) Although the ledger cards might indicate the $200 credit and the $300 credit, there are no further entries of payments on the larger account which was not paid in full. The evidence is clear that plaintiffs continued to have an account at the loan company and continued to make payments on their accounts. In spite of this fact the current manager of the loan company testified the two cards are the only records the company has pertaining to these plaintiffs. No records were introduced to show that plaintiffs’ accounts were actually reduced or that they actually received credit on their overall dealings with the loan company. Notations on the green and yellow cards by themselves do not prove payment or credit;
(8) The deed recites $950 cash consideration and plaintiffs testified this was the amount to be credited to their accounts. Mott testified the total amount was only $700, and attempted to explain the difference in the amount shown on the deed by stating he intended to sell the property (which he has not done) and marked up the price shown to help the resale value. Defendant’s explanation is not convincing.
Based on all the evidence, we are unable to conclude that plaintiffs ever received any consideration for the signing of the deed. There being a total failure of consideration, plaintiffs are entitled to have the sale annulled and set aside. LSA-C.C. Arts. 2046, 2561, 2045, 2130; Moore v. Sucher, 234 La. 1068, 102 So.2d 459 (1958); Shapiro v. Kimbrough, 20 So. 2d 24 (La.App. 1st Cir. 1944); Vanzant v. Morgan, 181 So. 660 (La.App. 2d Cir. 1938).
For the reasons assigned, the judgment of the district court is reversed, and
It is ordered, adjudged and decreed, that the act of sale by Lorenza Glass and John Glass to James Glenn Mott, dated November 27, 1967, filed for record under instrument number 119948 on January 9, 1968, recorded in Book 97, page 473 of the Conveyance Records of Caldwell Parish, Louisiana, be and it is hereby annulled and set aside.
It is further ordered, adjudged and decreed, that plaintiffs, Lorenza Glass and John Glass, be and they are hereby recognized as the owners of and entitled to the possession of the following described property to-wit:
An undivided two-thirds {?/■$) interest in and to:
10.54 acres in Sj/á of NWJ4 of SE & Ei/2 of NEÍ4 of SWj4 Section 15 Township 12 North, Range 4 East described as follows:
Begin at NW Cor. of NWj4 SE14 Sec. 15 T 12N R 4 E and measure S 0° 15.5' E along W. boundary of S1/2 NWJ4 SE14 of said Sec. 15 for a distance of 2.525 chains to point of beginning proper; thence N 89° 33.5' E 18.087 chs to S or E R/way of Holum-Copenhagen Road; thence SW along S or E R/way line of said road *89 13.74 chs. more or less to S boundary of NW14 SE'14 said Sec. IS; thence S 89° 32' W along the S boundary of NW14 of SE14 of Sec. IS, 3.726 chains; thence N 0° 15.5' W for a distance of 1.58 chains; thence S. 89° 32' W for a distance of 6.32 chs to W. boundary of NWJ4 of SEj4 Sec. 15; thence W. 1.69 ch; thence N 0° IS.5' for a distance of 5.92 chains thence E 1.69 chs to point of beginning, enclosing 10.54 acres, more or less.
It is further ordered, adjudged and decreed, that all costs of this proceeding, including the cost of appeal, are assessed against the defendant, James Glenn Mott.
Reversed and rendered.